**FILED**

APR 29 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | |
| | ) | **1:26CR00188** |
| v. | ) | CASE NO. _____ |
| | ) | Title 18, United States Code, |
| ANGEL DAVID ROSEN, | ) | Sections 1343, 1349, and 2 |
| REBECCA BRADSHAW, | ) | |
| OMAR NEGRON, | ) | **JUDGE OLIVER** |
| | ) | |
| Defendants. | ) | |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

Defendants and the Fraudulent Kickback Scheme

1.      Defendant ANGEL DAVID ROSEN resided in or around Cleveland, Ohio, in the Northern District of Ohio.  ROSEN operated a wood pallet company in or around Cleveland, Ohio, under the registered trade names Affordable Pallet and Best Affordable Pallet (collectively, "Affordable Pallet"), and at times used Person 1 and Person 2, relatives of ROSEN, to issue checks on behalf of Affordable Pallet.

2.      Defendants REBECCA BRADSHAW and OMAR NEGRON resided in or around Cleveland, Ohio, in the Northern District of Ohio.

3.      Victim 1 was a manufacturing company located in or around Cleveland, Ohio, that was a wholly owned subsidiary of a company headquartered in the State of North Carolina. Victim 1 maintained several facilities in the Northern District of Ohio, including a warehouse in Cleveland ("the Warehouse").  As part of its manufacturing and distribution process, Victim 1

regularly used wood pallets in the Warehouse to take delivery of raw materials, transport products within and among its various facilities, and deliver finished products to its customers.

4. From in or around April 1999 until on or about April 14, 2021, Victim 1 employed BRADSHAW in the Warehouse. Beginning in 2001, BRADSHAW's job duties included obtaining purchase order authorizations for wood pallets, placing orders for pallets, overseeing the receipt of deliveries at the Warehouse, and logging deliveries in Victim 1's electronic purchasing system so that Victim 1 could confirm receipt of items ordered and then timely pay bills for those items.

5. From in or around October 2010 until on or about June 30, 2020, Victim 1 employed NEGRON in the Warehouse, where his job duties included receiving and unloading wood pallet deliveries to the Warehouse and logging those deliveries.

6. From in or around 2014 through in or around 2021, Defendants engaged in a scheme to defraud Victim 1. Defendants arranged for ROSEN, who supplied pallets to Victim 1 through Affordable Pallet, to receive millions of dollars in payments for pallets that were never delivered. Victim 1 issued those payments because BRADSHAW and NEGRON falsely confirmed delivery of those non-existent pallets. ROSEN arranged to compensate BRADSHAW and NEGRON for misleading Victim 1 with regular kickback payments to them, totaling over $1.2 million.

### Victim 1's Process for Ordering, Receiving, and Paying for Pallet Deliveries

7. Employees in the Warehouse kept a handwritten log of delivery vehicles that arrived at the Warehouse on any given day, including recording the date of delivery; which employee inspected the delivery; the name of the company that made the delivery; the trailer number of the delivery vehicle; the product delivered and its condition; and the delivery

vehicle's arrival and departure times. Each delivery to the Warehouse was logged separately in the delivery log.

8.     Each delivery also had a corresponding delivery ticket, which was linked to a specific purchase order number and entry on the delivery log to ensure accuracy in Victim 1's payments to vendors.

9.     Victim 1, through BRADSHAW, regularly ordered wood pallets from Company 1, a pallet broker based in Rocky River, Ohio.

10.     From in or around April 2014 through in or around July 2021, Company 1 relied on ROSEN and Affordable Pallet to procure and deliver pallets ordered by Victim 1, effectively using Affordable Pallet as a subcontracted provider. Under this arrangement, Company 1 sent Affordable Pallet the pallet orders from Victim 1. Affordable Pallet was then supposed to obtain and deliver pallets to the Warehouse on behalf of Company 1, using Company 1's delivery tickets, which Affordable Pallet generally did for deliveries it made.

11.     After each Warehouse delivery, Victim 1 retained one copy of the delivery ticket to be logged into the Victim 1's purchasing system, and Affordable Pallet retained another copy of the ticket, which it subsequently sent to Company 1 to confirm delivery.

12.     Victim 1 paid Company 1 for these pallet orders, and Company 1 in turn paid Affordable Pallet, only after ROSEN confirmed to Company 1 that all the ordered pallets had been delivered, and Victim 1's employees, including BRADSHAW and NEGRON, confirmed that Victim 1 had received all the ordered pallets. BRADSHAW logged Victim 1's copies of the delivery tickets in Victim 1's procurement system to indicate that delivery had been completed. ROSEN caused Affordable Pallet's copies of the delivery tickets to be faxed to Company 1 to

3

confirm delivery had been completed. Company 1 then invoiced Victim 1 for the delivery to obtain payment.

13. After confirming that both delivery tickets matched, Victim 1 paid Company 1 via ACH transfer. Company 1 then paid Affordable Pallet via paper checks, which ROSEN subsequently deposited or caused to be deposited into one of Affordable Pallet's bank accounts.

COUNT 1
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

14. The factual allegations contained in paragraphs 1 through 13 are re-alleged and incorporated as though fully set forth herein.

The Conspiracy and Scheme to Defraud

15. From in or around April 2014, through on or about June 29, 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants ANGEL DAVID ROSEN, REBECCA BRADSHAW, and OMAR NEGRON, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit federal fraud offenses, that is: to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

4

<u>The Objects and Purposes of the Conspiracy and Scheme</u>

16. The objects and purposes of the conspiracy and scheme included, but were not limited to, the following: for the conspirators to unjustly enrich themselves by (a) defrauding Victim 1 and causing Victim 1 to pay for nonexistent pallets; (b) diverting proceeds for the conspirators' use and to further the conspiracy and scheme; and (c) concealing the conspiracy and scheme.

<u>Manner and Means of the Conspiracy and Scheme</u>

17. It was part of the conspiracy and scheme that:

a. BRADSHAW regularly initiated orders for wood pallets from Company 1 on behalf of Victim 1, seeking far more pallets than Victim 1 actually used or needed.

b. BRADSHAW, by submitting those purchase orders to Company 1, caused Company 1 to request that ROSEN, through Affordable Pallet, procure and deliver pallets to the Warehouse.

c. ROSEN delivered or caused to be delivered to the Warehouse only some or none of the pallets BRADSHAW ordered, but caused to be presented to NEGRON or BRADHSHAW delivery tickets for the full number of pallets ordered.

d. BRADSHAW and NEGRON confirmed delivery of nonexistent pallets on Victim 1's copy of the transaction paperwork, falsifying delivery tickets representing that all ordered pallets had been delivered to the Warehouse, when in fact BRADSHAW and NEGRON knew that Affordable Pallet had delivered only some or none of the pallets they were confirming were delivered.

e. At times, BRADSHAW and NEGRON failed to fully complete the transaction paperwork for ROSEN's delivery tickets, making it difficult for Victim 1 or others

5

reviewing the paperwork to be able to tie a delivery ticket for a purported delivery to a particular delivery by Affordable Pallet in the Warehouse delivery log.

f.      ROSEN represented and caused to be represented to Company 1 that Affordable Pallet had delivered the full number of ordered pallets to Victim 1, and BRADSHAW and NEGRON represented to Victim 1 that the full number of ordered pallets had been received, causing Victim 1 to remit payment to Company 1, which in turn paid Affordable Pallet most of the funds received from Victim 1.

g.      ROSEN deposited or caused to be deposited the Company 1 checks for the falsely inflated deliveries into Affordable Pallet's bank accounts.

h.      ROSEN then caused BRADSHAW and NEGRON to be paid regular kickbacks, generally weekly or bi-weekly, for falsely verifying the delivery of pallets to the Warehouse and causing Victim 1 to pay for pallets that had not been received.

<u>Acts in Furtherance of the Conspiracy and Scheme</u>

18.     In furtherance of the conspiracy, and to accomplish the objects and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

<u>*April 2014 Deliveries*</u>

19.     On or about April 28, 2014, NEGRON and BRADSHAW signed two separate delivery tickets purporting to show that Company 1, through Affordable Pallet, had made two separate deliveries to the Warehouse of 540 pallets and 580 pallets, respectively, when only one delivery had occurred.

20.     On or about April 28, 2014, BRADSHAW entered the falsified delivery tickets in Victim 1's electronic system.

6

21.     In or around April 2014, BRADSHAW entered a total of approximately 20 delivery tickets in Victim 1's system representing that Company 1 had delivered a total of approximately 11,040 pallets to the Warehouse that month, when Affordable Pallet made only approximately 16 deliveries to the Warehouse and had delivered only a fraction of that quantity.

22.     BRADSHAW's entries caused Victim 1 to pay Company 1 for pallets Affordable Pallet never delivered, in turn causing Company 1 to pay Affordable Pallet for pallets Affordable Pallet never delivered.

### *June 2015 Deliveries*

23.     On or about June 6, 2015, BRADSHAW entered a delivery ticket into Victim 1's electronic system purporting to show that Company 1, through Affordable Pallet, had delivered 540 pallets to the Warehouse on June 5, 2015, when Affordable Pallet did not make any deliveries to the Warehouse on that date.

24.     In or around June 2015, BRADSHAW entered a total of approximately 29 delivery tickets in Victim 1's system representing that Company 1, through Affordable Pallet, had delivered a total of approximately 16,480 pallets to the Warehouse that month.  In fact, Affordable Pallet made only approximately 13 deliveries to the Warehouse in June 2015 and had delivered only a fraction of that quantity.

25.     BRADSHAW's entries caused Victim 1 to pay Company 1 for pallets Affordable Pallet never delivered, in turn causing Company 1 to pay Affordable Pallet for pallets Affordable Pallet never delivered.

26.     In or around June 2015, ROSEN caused Affordable Pallet to issue checks to BRADSHAW totaling approximately $1,800 and checks to NEGRON totaling approximately $1,000.

*November 2018 Deliveries*

27.     On or about November 9, 2018, NEGRON signed a delivery ticket purporting to show that he had received a delivery of 540 pallets from Company 1, through Affordable Pallet, to the Warehouse, when Affordable Pallet did not make any deliveries to the Warehouse on that date.

28.     On or about November 12, 2018, NEGRON signed a delivery ticket purporting to show that he had received a delivery of 580 pallets from Company 1, through Affordable Pallet, to the Warehouse, when Affordable Pallet did not make any deliveries to the Warehouse on that date.

29.     In or around November 2018, BRADSHAW entered a total of approximately 45 delivery tickets in Victim 1's system representing that Company 1, through Affordable Pallet, had delivered a total of approximately 25,120 pallets to the Warehouse that month.  In fact, Affordable Pallet made only six deliveries to the Warehouse that month, and had delivered only a fraction of that quantity.

30.     BRADSHAW's entries caused Victim 1 to pay Company 1 for pallets Affordable Pallet never delivered, in turn causing Company 1 to pay Affordable Pallet for pallets Affordable Pallet never delivered.

31.     In or around November 2018, ROSEN caused Affordable Pallet to issue checks to BRADSHAW totaling approximately $12,200 and checks to NEGRON totaling approximately $14,692.

*March 2021 Deliveries*

32.     On or about March 8, 2021, BRADSHAW signed three delivery tickets purporting to show that Company 1, through Affordable Pallet, had delivered 1,700 pallets to the

8

Warehouse and entered them into Victim 1's electronic system, when Affordable Pallet made only one delivery to the Warehouse on that date.

33. In or around March 2021, BRADSHAW entered a total of approximately 35 delivery tickets in Victim 1's system representing that Company 1, through Affordable Pallet, had delivered a total of approximately 23,520 pallets to the Warehouse that month. In fact, Affordable Pallet made only 11 deliveries to the Warehouse that month, and had delivered only a fraction of that quantity.

34. BRADSHAW's entries caused Victim 1 to pay Company 1 for pallets Affordable Pallet never delivered, in turn causing Company 1 to pay Affordable Pallet for pallets Affordable Pallet never delivered.

35. In or around March 2021, ROSEN caused Affordable Pallet to issue checks to BRADSHAW totaling approximately $24,300.

### *April 2021 Deliveries and Post-Dated Delivery Tickets*

36. On or about April 12, 2021, BRADSHAW signed delivery tickets purporting to show that Company 1, through Affordable Pallet, had made four deliveries to the Warehouse that day, and entered them into the electronic system, when Affordable Pallet had made only one delivery to the Warehouse on that date.

37. From on or about April 1, 2021, to on or about April 13, 2021, BRADSHAW entered a total of approximately 20 delivery tickets in Victim 1's system representing that Company 1 had delivered a total of approximately 11,200 pallets to the Warehouse in that period. In fact, Company 1 made only 11 deliveries to the Warehouse during that time, and had delivered only a fraction of that quantity.

9

38. BRADSHAW's false entries caused Victim 1 to pay Company 1 for pallets Affordable Pallet never delivered, in turn causing Company 1 to pay Affordable Pallet for pallets Affordable Pallet never delivered.

39. On or about April 19, 2021, BRADSHAW texted an employee of Company 1 to increase the number of pallets for Affordable Pallet to deliver to Victim 1 that week, despite Victim 1 having terminated BRADSHAW's employment on or about April 14, 2021.

40. On or about April 22, 2021, ROSEN caused delivery tickets to be faxed to Company 1 to bill for deliveries purporting to have been made by Affordable Pallet at the Warehouse on April 16, 2021. The delivery tickets were purportedly signed by BRADSHAW as receiving delivery and dated April 16, 2021. In fact, Affordable Pallet made no deliveries to the Warehouse on that date, and BRADSHAW was no longer employed by Victim 1 on that date.

41. On or about April 29, 2021, despite no longer being employed by Victim 1, BRADSHAW texted an employee of Company 1 and told Company 1 not to order any pallets for Victim 1 the following week.

42. On or about May 3, 2021, ROSEN caused delivery tickets to be faxed to Company 1 to bill for deliveries that Affordable Pallet purportedly made at the Warehouse. All the delivery tickets were purportedly signed by BRADSHAW as confirming delivery on the following dates, when BRADSHAW was no longer employed by Victim 1:

    a. Four deliveries purporting to have been made on or about April 19, 2021, when in fact Affordable Pallet made only one delivery that day;

    b. One delivery purporting to have been made on or about April 20, 2021, when in fact Affordable Pallet made no deliveries that day;

10

c.     Two deliveries purporting to have been made on or about April 21, 2021, when in fact Affordable Pallet made only one delivery that day; and

d.     Two deliveries purporting to have been made on or about April 23, 2021, when in fact Affordable Pallet made no deliveries that day.

43.     In total, between on or about April 22, 2021, and on or about May 3, 2021, ROSEN caused the submission of invoices for at least twelve nonexistent deliveries of pallets, for a total of at least approximately 6,760 pallets billed for and never delivered, that Affordable Pallet purportedly delivered in April 2021.

44.     On or about May 26, 2021, ROSEN caused a Company 1 check for approximately $17,350 for Victim 1 deliveries to be deposited into Affordable Pallet's bank account.

45.     On or about June 29, 2021, ROSEN caused a Company 1 check for approximately $20,095 for Victim 1 deliveries to be deposited into Affordable Pallet's bank account.

### *Kickbacks to BRADSHAW and NEGRON*

46.     Beginning at least as early as on or about June 25, 2015, through on or about August 28, 2020, ROSEN issued and caused to be issued regular checks from Affordable Pallet to NEGRON totaling at least approximately $537,004.

47.     Beginning at least as early as on or about June 25, 2015, through on or about April 29, 2021, ROSEN issued and caused to be issued regular checks from Affordable Pallet to BRADSHAW totaling at least approximately $687,627.

48.     On or about April 30, 2021, BRADSHAW cashed one such check from Affordable Pallet to be cashed, initiating a funds transfer from Affordable Pallet's bank account, across state lines, and converted into cash proceeds for BRADSHAW.

All in violation of Title 18, United States Code, Section 1349.

COUNTS 2–4
(Wire Fraud, 18 U.S.C. § 1343 and 2 )

The Grand Jury further charges:

49.     The factual allegations contained in Count 1 are re-alleged and incorporated as though fully set forth herein.

50.     On or about the following dates, in the Northern District of Ohio, Eastern Division and elsewhere, the following Defendants, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted, writings, signs, signals, pictures, and sounds by means of wire and radio communication, in interstate commerce, to wit: the following instances in which checks were cashed or deposited in the Northern District of Ohio, each instance transmitting signals and causing electronic transfers of funds across state lines in interstate commerce, and each constituting a separate count of this Indictment:

| Count | Defendant Charged | Date Check was Cashed or Deposited | Check Issued by | Check Issued to | Approximate Amount |
|---|---|---|---|---|---|
| 2 | BRADSHAW | April 29, 2021 | Affordable Pallet | BRADSHAW | $3,500.00 |
| 3 | ROSEN | May 26, 2021 | Company 1 | Affordable Pallet | $17,350.00 |
| 4 | ROSEN | June 29, 2021 | Company 1 | Affordable Pallet | $20,095.00 |

All in violation of the Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

12